NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EDLIN LIMITED AND EDWIN SIEGEL, | : | Civil Action No. 07-cv-3431  (PGS) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CITY OF JERSEY CITY, JERRAMIAH HEALY, JERSEY CITY REDEVELOPMENT AGENCY, AMB CORP., | : | |
| | : | |
| Defendants. | : | |

**SHERIDAN, U.S.D.J.**

This Section 1983 suit stems from a purportedly improper redevelopment plan and study adopted by the City of Jersey City ("City") that rezones about 25 out of 32 acres of Plaintiffs' land as open space, thus allegedly rendering it valueless to Plaintiffs.  Plaintiff landowners bring suit against the City, Mayor Healy, Jersey City Redevelopment Authority ("Authority"), and the City's designated Master Redeveloper of the redevelopment area, AMB Corporation ("AMB").  Plaintiffs allege violations of substantive due process under the Fifth and Fourteenth Amendments for illegal seizure and taking without just compensation (Count I); abuse of government authority and eminent domain powers for personal motivations (Count II); estoppel and reliance (Count III); violation of equal protection rights under the Fourteenth Amendment (Count IV); violation of procedural due process rights under the Fifth and Fourteenth Amendments and violation of N.J.S.A. 40A:12A-1,

*et seq.* (Count V); New Jersey statutory violations (Count VI); and New Jersey Open Public Records Act violations (Count VII).  Plaintiffs request limited relief.  That is, a declaration that Defendants' actions constitute an illegal taking without just compensation and an award of same.  Defendants have moved to dismiss.  Defendants Jersey City and Mayor Healy filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendant Jersey City Redevelopment Agency has joined in that motion.  Defendant AMB moves to dismiss pursuant to Rule 12(b)(1) for lack of ripeness.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

I.

Plaintiffs Edlin and Siegel are the landowners of 10 lots in Jersey City ("the Siegel Property") amounting to approximately 32.8 acres.  They have owned the Siegel Property, located in a heavily industrialized area of Jersey City, since the 1940s.  Approximately 2.5 acres of the Siegel Property is home to several businesses, including a truck stop, a trucking sales and storage company, a check cashing company, and a restaurant.  The balance of the Siegel Property constitutes the former PJP Landfill, whose operation had taken place on an adjacent parcel which was owned at one time by the Archdiocese of Newark ("the Archdiocese Property") but had improperly encroached onto the Siegel Property for many years.  Waste Management, Inc., the successor to the PJP landfill, has agreed with the NJDEP to remediate the landfill, including the Siegel and Archdiocese Properties.

In early 2005, AMB purchased the Archdiocese Property and subsequently filed an application with the Jersey City Zoning Board to re-zone the property for high-cube warehouse operations.  Nearby residents of Jersey City opposed the re-zoning, citing concerns about potential exacerbation of the already serious traffic issues.  The citizens demanded that the Archdiocese

Property and surrounding areas be converted into open space.[1] In late 2006, in an effort to appease all parties, Mayor Healy announced a redevelopment plan that would only allow a high-cube warehouse facility within the redevelopment area and dedicated the surrounding properties as open space/park areas. The entire redevelopment area consists of the AMB and Siegel holdings. The redevelopment area can be broadly described as abutting the Hackensack River on the west, route 1 on the east, Duncan Avenue to the south and the entry to the Pulaski Skyway is down the road to the north. The Plan zoned 7.28 acres of the Siegel Property as high cube, but zoned the remainder as open space. The Siegel Property thus can not satisfy the minimum development area of 30 acres and minimum building size of 300,000 square feet in order to construct a warehouse. As noted previously, Plaintiffs allege their property was zoned into inutility because not only were they barred from building a high cube warehouse on the zoned property, the rest of the property was re-zoned as open space and would thus be unmarketable.

The City proceeded with unprecedented speed on the Redevelopment Plan. On or about August 16, 2006, the Jersey City Council adopted Resolution RES-06-690, which authorized the Jersey City Planning Board to investigate the physical and economic conditions of the redevelopment area. At that time, the City Council passed a motion authorizing the Planning Board to prepare a preliminary study simultaneously with a proposed redevelopment plan.[2] About a month later, on or about September 15, 2006, the Planning Board accepted its consultant's preliminary study, which found the Siegel Property and surrounding areas to be "blighted" and "in need of redevelopment"

---

[1] Plaintiffs allege that the high-cube zoning was also hindered by Jersey City Council members' political conflicts.

[2] Plaintiffs allege that this agreement violated the Local Lands and Buildings Law, N.J.S.A. 40A:12A-1, *et seq*. Plaintiffs also allege that "a completed preliminary investigation of the area's 'blighted' condition is first statutorily required to determine and create an appropriate redevelopment plan." Compl. ¶ 11.

together with a redevelopment plan which essentially reflected the concept that Mayor Healy outlined in late 2006.[3] The Study and Plan were forwarded to the Mayor and City Council for consideration and adoption.[4] On September 26, 2006, such preliminary approval was adopted. The Study and Plan were then rushed back to the Planning Board for final approval, and on September 27, 2006, by way of Ordinance 06-118, the City Council and Mayor adopted the Study and Redevelopment Plan during a hearing held at a school house near the site.[5]

According to Plaintiffs, the City subsequently began planning its redevelopment, slotting the Siegel Property to be used as a golf course once the PJP Landfill had been remediated. The City coordinated with Hudson County to combine the Siegel Property with a nine-hole golf course Hudson County was designing for Lincoln Park at the intersection of Route 1 and Duncan Avenue. At that time, Jersey City requested that the NJDEP delay remediation of the PJP Landfill so that the City could integrate the golf course idea into the remediation plan. Without explanation, Jersey City has withdrawn its golf course proposal. Despite its supposed intention to obtain an appraisal of the Siegel Property, Jersey City has made little effort to purchase the property for fair market value. No eminent domain proceeding has been instituted against the Siegel Property, and Plaintiffs still enjoy

---

[3] Plaintiffs indicate that much of the "open space" would be adjacent to U.S. Routes 1 and 9, would be subject to pollution and traffic, and that the "open space" would be located next to heavy industrial areas. Furthermore, the redevelopment plan did not alter the zoning of the northern section of the redevelopment area and thus allowed for continued industrial use and expansion. Plaintiffs thus allege that similarly situated land owners were treated more favorably.

[4] Plaintiffs' complaint alleges that the Township Defendants did not provide adequate notice, public hearings, or investigations regarding the redevelopment plan and study, and inappropriately, arbitrarily, and capriciously designated the redevelopment area as "blighted" and "in need of redevelopment" without following statutory procedures of approving a study and then approving a redevelopment plan.

[5] According to Plaintiffs, this hearing lacked the statutorily required reasonable notice and opportunity to be heard because it was held the very next day after the study and redevelopment plan were adopted.

the use of the Siegel Property as they have for the last 60 years. However, Plaintiffs contend they have been harmed because a tentative buyer who wished to construct a fuel storage facility on the site reneged due to the rezoning to open space. Plaintiffs have never applied for approval of any development plans or variances.

Plaintiffs further allege that unidentified City Officials have "conspired" against Siegel for purposes of harassment by issuing meritless notices of violations and fines totaling $17 million. Plaintiffs allege that this conspiracy was meant to compel Plaintiffs to accept a less than fair market value for their property. City officials indicated that the fines would "go away completely" if Plaintiffs would sell Jersey City or AMB the Siegel Property at a discounted price. Plaintiffs do not identify who stated same, no law enforcement agency has been contacted, and at present the fines are being challenged in a different forum. The violations were for illegal storage of garbage in truck containers. The Hudson County Board of Construction Appeals reduced the penalties to $137,000, which Plaintiffs have paid.[6]

## II.

Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]. 'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff

---

[6]     Plaintiffs further contend that, under the Open Public Records Act ("OPRA"), defendants have failed to produce all public records in this matter, including the Master Redeveloper Agreement, and meeting minutes and transcripts from the various hearings conducted including the August 15, September 15, 26 and 27, 2006 hearing detailed earlier in this Opinion There is a very detailed process including judicial intervention, assessment of costs, fees, and fines. N.J.S.A. § 47:1A-1, *et seq.* It is a state court action, and this Court will not assert supplemental jurisdiction over the OPRA claims, as explained below.

must bear the burden of persuasion.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially from that under Rule 12(b)(6) when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-cv-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted). Thus, consideration of the motion does not have to be limited – conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). "However, '[w]here an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited.'" *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703 at *9 (internal citations omitted).

On a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir.2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that

person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S.Ct. 1091 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.' " *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).

## III.

Ripeness must be considered as an initial matter, as it goes to the Court's jurisdiction and whether or not the cause of action is justiciable as a "case or controversy." *See Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, AFL-CIO v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998).

The United States Supreme Court case of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) is controlling in this matter. The facts in *Williamson* were as follows. Williamson County's legislative body adopted an ordinance in 1973

allowing for "cluster" development of residential areas, which "allows housing units to be grouped, or 'clustered' together, rather than being evenly spaced on uniform lots." *Id.* at 176. In 1973, a previous developer submitted a preliminary plat for cluster development of its property – the first step in the County's then two-step process for approval. The Commission approved the preliminary plat, which included significant open space. *Id.* The developer thus conveyed to the County a permanent open space easement for the golf course to be located on the land, and began substantial building. During that time, several sections of the plat were approved, and the preliminary plat was re-approved. In 1980, the Commission asked for a revised preliminary plat before seeking final approval for the remainder of the subdivision due to several surveying errors, and because "the land available in the subdivision had been decreased inasmuch as the State had condemned part of the land for a parkway, and the areas marked 'reserved for future development' had never been platted." *Id.* at 178-79. The Commission found problems with the revised plat and ultimately disapproved the plat. The developer appealed to the zoning board of appeals, which instructed the board to evaluate the plat by using the 1973 zoning standards.

Respondent Hamilton Bank acquired, through foreclosure, the part of the subject property that was as yet undeveloped. In 1981, the bank submitted two preliminary plats to the Commission, including the original plat from 1973 and a new one contemplating development of the undeveloped areas (similar to the 1980 plat). The Commission quickly disapproved the plat on several grounds and "declined to follow the decision of the Board of Zoning Appeals that the plat should be evaluated by the 1973 zoning ordinance and subdivision regulations, stating that the Board lacked jurisdiction to hear appeals from the Commission." *Id.* at 180. Respondent filed suit in the District Court alleging a taking because the Commission denied approval of the project. A jury found there to be a taking, but the District Court entered a judgment notwithstanding the verdict. The United

States Court of Appeals for the Sixth Circuit reversed, and the United States Supreme Court granted cert.

The Supreme Court in *Williamson* established a two-prong test for assessing the ripeness of a Takings claim, both of which must be satisfied for a Takings claim to be ripe. Prong one is the "finality rule" – "a claim that the application of government regulations effect a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. Such a requirement is not tantamount to an exhaustion of administrative remedies,[7] but instead requires plaintiffs to be clear that the government would deny development of the land (and thus strip away any economic utility); such clarity is obtained, *inter alia*, by seeking variances or seeking approval for alternative development plans. *Id.* at 187-88, 192.

The second prong is the "exhaustion of just compensation procedures" test. The Plaintiff must "seek compensation through the procedures the State has provided for doing so prior to initiating a federal claim." *Williamson County*, 473 U.S. at 194. Pursuant to *Williamson*, if the state "provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the *Just Compensation Clause* until it has used the procedure and been denied just compensation." *Id.* at 195. An example of such a proceeding is an inverse condemnation action.

a. Takings Claim/Substantive Due Process Claim[8] (Count I)

---

[7] Plaintiffs need not exhaust all their state administrative remedies. The *Williamson* Court indicated that the "question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable." *Williamson County*, 473 U.S. at 192.

[8] Plaintiffs' counsel conceded at oral argument that there was no independent substantive due process claim, and that the Just Compensation Takings claim was one in the same with the alleged substantive due process violation.

Here, Plaintiffs' Just Compensation Takings claim (Count I) does not satisfy the second

prong of the *Williamson* test.  In New Jersey, inverse condemnation – and thus the pursuit of just

compensation in compliance with prong two of *Williamson* – is accomplished primarily through

N.J.S.A. § 20:3-6.  A Court in this District has explained that

> New Jersey's inverse condemnation procedures are not codified
> although they find their origin in the state's eminent domain statute,
> N.J. Stat. Ann. §§ 20:3-1 to -50 (Supp. 1988). Under state common
> law, there exists an appropriate procedure when a governmental entity
> with eminent domain power has taken property but has not given
> compensation.  Such an action is based on an alleged violation of
> state and federal constitutional just compensation guarantees.  The
> proceeding is essentially a mandamus action to compel the
> government entity involved to initiate condemnation procedures. "At
> issue in such a proceeding is whether the actions of the entity vested
> with condemning power in its impact on the owner's land constitutes
> a taking thereof."  Because New Jersey allows plaintiffs such a
> post-deprivation remedy, they had to invoke the mandamus procedure
> before filing an action in federal court.  Because a plaintiff first must
> go to a New Jersey court of general jurisdiction to invoke state
> compensation procedures, that court must pass on the question of
> whether there was a taking under state (and perhaps federal) law.

*Peduto v. N. Wildwood*, 696 F. Supp. 1004, 1009 (D.N.J. 1988) (internal citations omitted).

It is undisputed in this case that Plaintiffs have not pursued any state court proceedings to

obtain just compensation.  Plaintiffs indicate that "there are no concurrent state claims pending" and

there is nothing in the complaint to suggest that Plaintiffs have pursued an inverse condemnation

action or any proceeding comparable thereto in order to obtain just compensation before filing suit

in federal court.[9]  Because Plaintiffs cannot satisfy the second prong of the *Williamson* ripeness

___

[9] The major exception to this prong relates to public use – if the taking is for private
purposes, the plaintiff need not pursue state just compensation procedures. "[A] taking fails the
public use requirement if and only if the uses offered to justify it are 'palpably without
reasonable foundation,' such as if (1) the 'sole purpose' of the taking is to transfer property to a
private party, or (2) the asserted purpose of the taking is a 'mere pretext' for an actual purpose to
bestow a private benefit." *Goldstein v. Pataki*, 488 F. Supp. 2d 254, 286 (E.D.N.Y. 2007) (cited

analysis, the Court need not engage in an analysis of the first prong (the "finality" rule).   As such, Defendant's 12(b)(1) motion is granted, and the Takings/Substantive Due Process claim is dismissed without prejudice as unripe.  Plaintiffs should seek proper compensation procedures at the state level before coming to federal court.

   b.  Equal Protection (Count IV)

   Plaintiffs argue that their property was inequitably treated when compared to other "similarly situated" properties pursuant to the Redevelopment Plan.  In addition, Plaintiffs claim Jersey City levied unreasonable fines against Plaintiffs, but not against others, in an alleged plan to "shake down" Plaintiffs so they would sell the Siegel Property to Jersey City at a low price.  While the complaint alleges disparity in treatment between Plaintiffs and other "similarly situated" landowners (AMB), the relief requested mimics the Just Compensation Takings claim, which in the prior section the Court has deemed unripe.  In this Count, Plaintiffs ask for, *inter alia*, damages, an order directing Jersey City to purchase the property, a declaration of inverse condemnation "constituting an illegal taking without adequate compensation," and an order declaring a violation of the Local Lands and Buildings Law, N.J.S.A. § 40A:12-1, *et seq.*  These remedies are the precise remedies requested as relief for the Just Compensation Takings claim in Count I (except for the statutory violation).  Plaintiffs do not request that the Court deem the Redevelopment Plan or Ordinance unconstitutional or null and void in violation of the Equal Protection clause; the Plaintiffs merely request just compensation in deeming the Siegel Property valueless  – because Plaintiffs cannot develop and a "similarly situated" landowner can develop.  As such, the Court construes the disparate treatment

in *CBS Outdoor, Inc. v. N.J. Transit Corp*, No. 06-2428, 2007 WL 2509633, at *13 (D.N.J. Aug. 30, 2007)).  Plaintiffs, however, have not argued this type of futility, nor is there any indication in the record that would suggest the futility of seeking just compensation due to the private nature of the alleged taking in this case.

as a factor to be considered in the Just Compensation Takings claim. Therefore, the same *Williamson* second prong analysis applies.

In addition to disparate treatment, the issue with regard to the imposition of fines for illegal storage/dumping garbage arose. The Court notes that it was undisputed that there are ongoing state proceedings and appeals with regard to the fines levied against Plaintiff for alleged environmental violations. Furthermore, there is an ejectment action pending that revolves around an occupant of the Siegel Property who committed the alleged violations. Because there are ongoing state proceedings with regard to the fines and the ejectment action, the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) is appropriate. "Generally, Younger abstention is appropriate when three requirements are present, namely, (1) ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) state proceedings afford an adequate opportunity to raise federal claims." *Harrison Eagle, LLP v. Town of Harrison*, No. 06-3074, 2007 U.S. Dist. LEXIS 70382, at *15 (D.N.J. Sept. 24, 2007).

Here, there are ongoing judicial state proceedings (hearings and appeals with regard to the fines and an action for ejectment) where an important state interest is at issue (environmental infractions for possibly dangerous dumping). This provides a sufficient forum to bring federal claims, as the New Jersey Superior Court has concurrent jurisdiction over federal claims. Furthermore, Plaintiffs have not presented any evidence to suggest that the federal claims cannot be adjudicated in a state action and that such a forum would be inadequate. In addition, the state claims seek the same relief – a declaration that Defendants' action constitutes an illegal taking without adequate compensation. It appears *Williamson* applies to these claims also. Thus, the Court abstains from addressing the fees portion of the Equal Protection argument.

c. Procedural Due Process (Count V)

Plaintiffs allege that Defendants violated their Procedural Due Process rights when the Council and/or Planning Board failed to follow ordinary notice requirements in adoption of the Redevelopment Plan. Plaintiffs claim, *inter alia*, that the Council, Planning Board and Authority improperly concurrently approved the Study and Redevelopment Plan without providing the necessary public hearings, notices, and opportunities to be heard mandated by New Jersey law and the Fifth and Fourteenth Amendments. More particularly, Plaintiffs' complaint alleges that the Planning Board "concurrently approv[ed] both the Study and the Redevelopment Plan," did so "without providing the several duly called public hearings, reasonable notices and opportunities to be heard contemplated by the statutory process," and that "the City Council's and Healy's adoption and approval of the Study and Redevelopment Plan the very next day without a duly called public hearing, notice and opportunity to be heard is a violation of Edlin's and Siegel's Fifth and Fourteenth Amendment rights" as well as violative of New Jersey statutory law. Defendants, in their briefs, do not appear to address the procedural due process issue head-on.[10]

Regardless of the alleged procedural deficiencies, Plaintiffs seek one form of relief. That is, to declare an inverse condemnation "constituting an illegal taking without adequate compensation," and to declare a violation of N.J.S.A. 40A:12-1, *et seq.* The Procedural Due Process claim is, like the Equal Protection claim, nothing more than a factor to be considered in a Just Compensation Takings claim. Therefore, the same *Williamson* second prong analysis as utilized above applies.

---

[10]  After oral argument before this Court, the City attempted to submit evidence of notice given to Plaintiffs and compliance with statutory procedures. On April 18, 2008, this Court notified the parties that such evidence would not be considered in this motion as it was filed out of time.

IV.

Plaintiffs also allege various State Law Claims set forth in Counts II, III, V, VI, and VII. Pursuant to 28 U.S.C. § 1367(c)(3), a District Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Here, all of the federal claims are being dismissed at this time. Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Although such a determination is discretionary, in the Third Circuit, "[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 05-772, 2006 U.S. Dist. LEXIS 54289, at *5 (W.D. Pa. Aug. 4, 2006).

V.

The Authority and AMB are dismissed from the case entirely. It was evident to the Court after reading the papers and listening to oral argument, that there are no real allegations against either of these parties. Plaintiffs averred that these Defendants were "indispensable parties" in that their rights will be affected by the outcome of this case. However, these parties did not adopt the Ordinance and Resolution or levy the fines that are at the core of Plaintiffs' civil action. There is nothing to support the contention that either of these parties inversely condemned the Siegel Property. Hence, based on the pleading, there are no real claims against either. The Plaintiffs fail to allege anything that is beyond mere speculation. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).[11]

VI.

In summary, the motion to dismiss for lack of ripeness is granted as to Plaintiffs' federal

---

[11]     Plaintiffs have not requested an opportunity to amend their pleadings.

claims, and the Court declines to exercise supplemental jurisdiction over any state law claims. Defendants Jersey City Redevelopment Authority and AMB are dismissed from the case entirely for failure to state a claim for which relief may be granted.  The case is dismissed without prejudice.

Peter G. Sheridan, U.S.D.J.

May 23, 2008